UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

TIMOTHY G. IVEY, JR.,

                    Plaintiff,                **DECISION AND ORDER**

      v.

                                    1:19-CV-00657 EAW

COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.
_____

## <u>INTRODUCTION</u>

Represented by counsel, plaintiff Timothy G. Ivey, Jr. ("Plaintiff") brings this action pursuant to Title XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying his application for supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g).

Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 11; Dkt. 16), and Plaintiff's reply (Dkt. 17). For the reasons discussed below, the Commissioner's motion (Dkt. 16) is granted and Plaintiff's motion (Dkt. 11) is denied.

- 1 -

## BACKGROUND

Plaintiff protectively filed his application for SSI on October 13, 2015.  (Dkt. 6 at 90).[1]  In his application, Plaintiff alleged disability beginning October 13, 2015, due to the following impairments: depression; panic attacks; paranoia; visual hallucinations; and problems walking with both legs.  (*Id.* at 91).  Plaintiff's application was initially denied on February 25, 2016.  (*Id.* at 103-14).  At Plaintiff's request, a hearing was held before administrative law judge ("ALJ") Stephen Cordovani, in Buffalo, New York on April 23, 2018.  (*Id.* at 45-89).  On June 20, 2018, the ALJ issued an unfavorable decision.  (*Id.* at 11-36).  Plaintiff requested Appeals Council review; his request was denied March 23, 2019, making the ALJ's determination the Commissioner's final decision.  (*Id.* at 5-10).  This action followed.

## LEGAL STANDARD

### I.    District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g).  The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence.  42 U.S.C. § 405(g).  "Substantial evidence means more

---

[1]      When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted).  It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs*., 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).  However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.    <u>Disability Determination</u>

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act.  *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986).  At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity.  *See* 20 C.F.R. § 416.920(b).  If so, the claimant is not disabled.  If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities.  *Id*. § 416.920(c).  If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled."  If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 416.920(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (*id*. § 416.909), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id*. § 416.920(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. *Id*. § 416.920(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 416.920(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted).

## DISCUSSION

### I.   The ALJ's Decision

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. § 416.920. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since October 13, 2015, the application date. (Dkt. 6 at 16).

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: obesity; diabetes mellitus; polymyositis; major depressive disorder; panic disorder; post-traumatic stress disorder ("PTSD"); and history of asthma. (*Id.*). The ALJ further found that Plaintiff's medically determinable impairments of mild to moderate obstructive sleep apnea, hypertension, and migraine headaches were non-severe. (*Id.* at 17).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id.* at 17-19). The ALJ particularly considered the criteria of Listings 3.03, 12.04, 12.06, 12.15, and 14.05 in reaching his conclusion, as well as considering the effect of Plaintiff's obesity as required by Social Security Ruling ("SSR") 02-01p. (*Id.*).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform sedentary work as defined in 20 C.F.R. § 416.967(a), with the additional limitations that:

> [Plaintiff] can occasionally climb stairs and ramps. He cannot kneel, crouch, crawl, or climb ladders, ropes, or scaffolds. [Plaintiff] cannot work around hazards such as unprotected heights or dangerous moving mechanical parts. He must use a cane when ambulating greater than 50 feet. He should avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation and other respiratory irritants. He can understand, remember and carry out simple instructions and tasks. He is able to work in a low stress work environment reflected by simple work, no supervisory duties, no independent decision-making required, no strict production quotas, and minimal changes in work routine and processes. [Plaintiff] cannot travel to unfamiliar places. He can have occasional interaction with supervisors, co-workers and the public.

(*Id.* at 19). At step four, the ALJ found that Plaintiff had no past relevant work. (*Id.* at 30).

At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of lens inserter, order clerk, and surveillance systems monitor. (*Id.* at 31). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act. (*Id.*).

## II.   The Commissioner's Determination is Supported by Substantial Evidence and Free from Reversible Error

Plaintiff asks the Court to reverse or, in the alternative, remand this matter to the Commissioner, arguing that: (1) the ALJ improperly weighed the stale opinions of consultative examiners Dr. Donna Miller and Dr. Gregory Fabiano; (2) the ALJ improperly evaluated nurse practitioner ("NP") Adrianne Roy's opinion; (3) the ALJ's RFC finding is unsupported by substantial evidence; (4) the ALJ erred in his step three analysis; and (5) the ALJ failed to properly account for Plaintiff's well-supported functional limitations. (*See* Dkt. 11-1). The Court has considered these arguments and, for the reasons discussed below, finds them to be without merit.

### A.   Physical RFC and Weighing of Dr. Miller's Opinion

In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). An ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in his decision." *Id.* However, an ALJ is not a medical professional, and "is not qualified to assess a claimant's RFC on the basis of bare medical findings." *Ortiz v. Colvin*, 298 F. Supp. 3d 581, 586

(W.D.N.Y. 2018) (quotation omitted).  "[A]s a result[,] an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." *Dennis v. Colvin*, 195 F. Supp. 3d 469, 474 (W.D.N.Y. 2016) (quotation omitted).

In assessing Plaintiff's physical RFC, the ALJ assigned great weight to Dr. Miller's December 2015 opinion.  (Dkt. 6 at 29).  Plaintiff argues that this was error because the opinion was rendered stale by Plaintiff's February 2016 polymyositis diagnosis.[2]  (*See* Dkt. 11-1 at 16).  The Court disagrees.  "[M]edical source opinions that are conclusory, stale, and based on an incomplete medical record may not be substantial evidence to support an ALJ finding." *Camille v. Colvin*, 104 F. Supp. 3d 329, 343 (W.D.N.Y. 2015).  "A medical opinion may be stale if it does not account for the claimant's deteriorating condition." *Carney v. Berryhill*, No. 16-CV-269-FPG, 2017 WL 2021529, at *6 (W.D.N.Y. May 12, 2017).  However, a medical opinion is not necessarily stale simply based on its age.  A more dated opinion may constitute substantial evidence if it is consistent with the record as a whole notwithstanding its age.  *See Andrews v. Berryhill*, No. 17-CV-6368 (MAT), 2018 WL 2088064, at *3 (W.D.N.Y. May 4, 2018) (ALJ did not err in relying on dated opinions where there was no indication the plaintiff's "condition had significantly deteriorated after the issuance of . . . [the] opinions such that they were rendered stale or incomplete").

Dr. Miller performed a consultative examination of Plaintiff on December 22, 2015.

---

[2]      "Polymyositis is an inflammatory disease that causes bilateral muscle weakness.  Its symptoms include difficulty climbing stairs, rising from a seated position, and lifting objects or reaching overhead." *Mai v. Comm'r of Soc. Sec.*, No. 15-CV-7448 (PKC), 2017 WL 4357377, at *11 n.35 (E.D.N.Y. Sept. 29, 2017) (citation omitted).

(Dkt. 6 at 312-15).  Plaintiff reported that he had been told that "he had a connective tissue disorder, but [that] doctors were not quite sure which one it was."  (*Id.* at 312).  Plaintiff also stated that "he continues to have pain with prolonged walking and prolonged activity," but that "[r]est and medication helps alleviate it."  (*Id.*).  Dr. Miller conducted a neurologic examination of Plaintiff, noting: "[deep tendon reflexes] physiologic and equal in upper and lower extremities.  No sensory deficit noted.  Strength 5/5 in the upper and lower extremities."  (*Id.* at 314).  Dr. Miller diagnosed Plaintiff with myalgia,[3] hypertension, and asthma, and opined that Plaintiff was mildly limited in lifting, bending, carrying, pushing, and pulling and that Plaintiff should avoid dust, irritants, and tobacco exposure.  (*Id.* at 314-15).  The ALJ gave this opinion "great weight" because it was "consistent with the overall medical evidence of record and with [Plaintiff's] activity level" and due to Dr. Miller's "program knowledge," "detailed examination," and "detailed opinion."  (*Id.* at 29).

The medical evidence of record does not demonstrate that Plaintiff's condition significantly deteriorated after Dr. Miller's December 2015 opinion.  The treatment records indicate that Plaintiff sometimes complained of body pain and experienced some muscle weakness, but that his condition was generally managed with medication and that he was advised to include exercise and physical therapy in his treatment.  (*See* Dkt. 6 at 400-05 (on January 30, 2018, Dr. Sunitra Chadha noted that Plaintiff was last seen by Dr. Neha Dang "at which time he was doing relatively well and was only on 5 mg of prednisone

---

[3]     "Myalgia is defined as pain in a muscle or group of muscles."  *Revi v. Comm'r of Soc. Sec.*, No. 16cv08521 (ER) (DF), 2018 WL 1136997, at *6 n.24 (S.D.N.Y. Jan. 30, 2018) (internal quotation marks and citation omitted).

daily" but that Plaintiff had "a flare of his muscle weakness and pain," advised Plaintiff regarding different medication options, and opined that Plaintiff was a suitable candidate for physical therapy), 514-45 (at August 1, 2017, examination, upon Plaintiff's reports that he "continues to have pain in his knees and thighs," but that he "[was] doing much better" and was "not having much weakness," Dr. Dang concluded Plaintiff was "doing significantly better with not much weakness," "CK continues to improve," and "no worsening symptoms"), 550 (on March 30, 2018, Dr. Chadha observed Plaintiff's polymyositis as stable), 571 (at July 8, 2016, appointment with Dr. Dang, Plaintiff reported that he still had muscle pain in his thighs but that it was "much better than before"), 578 (at July 27, 2016, examination with Dr. Mohammed Abdel-Aal Ahmed, Plaintiff reported "some muscle pain that's generally well controlled with Tylenol and Aleve" and that he was "able to do [activities of daily living] but no excessive activity," and denied "any muscle weakness"), 630 (on March 30, 2018, Dr. Chadha made changes to Plaintiff's medication regimen and advised Plaintiff of the importance of exercising in treating his muscle disorder), 711 (at March 3, 2017, examination by Dr. Dang, Plaintiff reported that he continues to have pain in his thighs, but that he was doing much better and not having much weakness)).  Dr. Miller's opinion was thus not stale and provided evidentiary support for the ALJ's conclusions.  The Court finds that the ALJ did not commit error in affording "great weight" to Dr. Miller's opinion and his reasons for affording it great weight were proper and supported by the record.[4]

---

[4]      Plaintiff cites *Vazquez v. Saul*, No. 18-CV-242, 2019 WL 3859031, at *4 (W.D.N.Y. Aug. 16, 2019) for the broad proposition that a new diagnosis renders a prior consultative examination stale.   However, *Vazquez* is easily distinguishable.   In *Vazquez*, the

Having concluded that Dr. Miller's opinion constituted substantial evidence in support of the ALJ's decision, Plaintiff's argument that his physical RFC was unsupported by substantial evidence also fails.  The ALJ's RFC finding accounts for all the limitations identified by Dr. Miller, while also crediting Plaintiff's testimony in assessing additional limitations.  For example, the ALJ limited Plaintiff to requiring use of a cane when ambulating greater than 50 feet (*id.* at 19) based on Plaintiff's testimony that he could walk one block using a cane or walker (*id.* at 64).  Moreover, the RFC finding indicated that Plaintiff could not kneel, crouch, crawl, or climb ropes or scaffolds (*id.* at 19), which was consistent with Plaintiff's testimony that he had difficulty getting up when crouching and with his Function Report in which he reported difficulty climbing stairs, kneeling, and squatting (*id.* at 65, 233).  The fact that the ALJ afforded Plaintiff the benefit of the doubt and included additional imitations in the RFC finding beyond those assessed by Dr. Miller is not grounds for remand.  *Baker v. Berryhill*, No. 1:15-cv-00943-MAT, 2018 WL 1173782, at *4 (W.D.N.Y. Mar. 6, 2018) ("[R]emand is generally not warranted where the ALJ's RFC finding is more restrictive than the limitations set forth in the medical opinions of record.").

---

consultative examiner did not identify any limitations with respect to the plaintiff's hand and finger dexterity and instead found 5/5 bilateral grip strength.  *Id.* at *4.  As such, a new diagnosis of carpel tunnel syndrome rendered stale the consultative examiner's opinion concerning the plaintiff's hands and fingers.  Here, by contrast, Dr. Miller knew that doctors had diagnosed Plaintiff with an unspecific connective tissue disorder and that he suffered from muscle pain.  Moreover, Dr. Miller's findings and diagnosis of myalgia were consistent with Plaintiff's subsequent polymyositis diagnosis, in addition to the medical evidence of record which documented muscle weakness and pain.

**B.**     **Mental RFC and Weighing of Dr. Fabiano's and NP Roy's Opinions**

In assessing Plaintiff's mental RFC, the ALJ gave "great weight" to psychological consultative examiner Dr. Fabiano's opinion.  (Dkt. 6 at 29).  Dr. Fabiano completed a psychiatric examination of Plaintiff in December 2015 and opined that:

> [Plaintiff] does not appear to have any evidence of limitations in the ability to follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration, maintain a regular schedule, learn new tasks, perform complex tasks independently, or make appropriate decisions.  He appears to have some moderate limitations in his ability to relate adequately with others and appropriately deal with stress.

(Dkt. 6 at 309).  The ALJ gave this opinion "great weight" because it was "consistent with the opinion of the State agency consultant, Dr. Dipeolu (Exhibit 2A) as well [Plaintiff's] activity level" and due to Dr. Miller's "program knowledge," "detailed examination," and "detailed opinion."  (*Id.* at 29).

Plaintiff argues that Dr. Fabiano's December 2015 opinion was stale "due to the amount of treatment and deterioration which happened after the opinion was rendered." (Dkt. 11-1 at 17).  Plaintiff argues that "[a]t the time of Dr. Fabiano's opinion, Plaintiff had just started attending therapy."  (*Id.*).  As such, Plaintiff argues that Dr. Fabiano's opinion did not account for subsequent mental health treatment which indicated that Plaintiff's anxiety and depression continued to worsen.  (*See id.*).  The Court disagrees.  Although Dr. Fabiano rendered his opinion more than two years before the ALJ's decision, the time gap alone does not render his opinion stale.  The treatment records do not show that Plaintiff's condition significantly deteriorated after Dr. Fabiano's December 2015 opinion.  Despite ongoing complaints of depression and anxiety, Plaintiff's mental status examinations were

generally unremarkable throughout the relevant time period.  (*See* Dkt. 6 at 425-27, 450-51, 457-58, 481, 553, 568, 570, 636, 642).

Plaintiff cites the fact that he lived at Ebenezer Square in assisted living, where he received assistance in handling funds and managing his appointments, medication, and transportation, as evidence that Dr. Fabiano's opinion was rendered stale.  (*See* Dkt. 11-1 at 17-18).  However, the record does not indicate that Plaintiff lived at Ebenezer Square because he was unable to live independently—to the contrary, his preplacement assessment indicates that Plaintiff was able to perform his own activities of daily living, including cooking, cleaning, and laundry, and that he was able to use public transportation and care for his own hygiene needs.  (*See id.* at 551).  Further, Plaintiff did not testify that he had a representative payee because he was unable to manage his funds, but rather because "[he] was nervous about living on [his] own."  (*Id.* at 56; *see also id.* at 55 (Plaintiff testified that he had a representative payee so that he could "make better choices about how [he was] spending [his] money")).  Plaintiff's testimony was consistent with Ebenezer Square's functional assessment, which indicated that Plaintiff was independent in the area of financial and money management as he could independently stay within a budget, communicate financial concerns to staff, tend to welfare benefits, and complete banking transactions.  (*Id.* at 506-07).

The Ebenezer Square functional assessment also indicated that Plaintiff was able to complete most tasks independently, including using public transportation, and a few tasks with encouragement or assistance.  (*See id.* at 503-08).  This assessment was consistent with the evidence of record indicating that Plaintiff was able to manage his mental health

symptoms. (*See id.* at 475 (on February 15, 2018, Plaintiff reported that he attended karaoke events and a Valentine's Day party at his living facility and that school had been going well, that he had been completing all of his school work, and had an average of 93%), 514 (June 26, 2017, treatment record indicated improvement in frequency of hallucination and nightmares), 568 (on March 1, 2016, Plaintiff described "manageable anxiety at home," including "minor worrying about his finances, medical condition and living situation"), 570 (on April 25, 2016, Plaintiff reported that "he would be better off with a desk job," "he is very good with computers," and that he would follow up with the Office of Vocational and Educational Services for Individuals with Disabilities before school starts), 578 (at June 27, 2016, appointment with Dr. Ahmed, Plaintiff reported that his "depression was under good control")). Accordingly, there is no evidence that Plaintiff's condition meaningfully deteriorated, thus rendering Dr. Fabiano's December 2015 opinion stale. The Court finds that the ALJ did not commit error in affording Dr. Fabiano's opinion great weight and his reasons for affording it great weight were proper and supported by the record. *See Guerra v. Comm'r of Soc. Sec.*, No. 1:16-CV-00991 (MAT), 2018 WL 3751292, at *7 (W.D.N.Y. Aug. 7, 2018) ("An ALJ has discretion to weigh the opinion of a consultative examiner and attribute the appropriate weight based on his review of the entire record.").[5]

---

[5]     Plaintiff cites *Estrella v. Berryhill*, 925 F.3d 90, 98 (2d Cir. 2019) for the proposition that an ALJ cannot rely on the opinion of a consultative examiner in assessing a plaintiff's mental RFC. (Dkt. 11-1 at 19). Plaintiff's reliance on *Estrella* is misplaced. In *Estrella*, the ALJ gave "little weight" to the plaintiff's treating physician's opinion. *Estrella*, 925 F.3d at 98. The Second Circuit concluded this was error because the ALJ's reliance on the consultative examiner's opinion did not provide a "good reason" for rejecting the treating physician's opinion. *Id.* By contrast, the record in this case does not contain an opinion

The Court is also not persuaded by Plaintiff's argument that Dr. Fabiano's opinion was inconsistent with the record. (*See* Dkt. 11-1 at 18). As discussed above, Dr. Fabiano's opinion was consistent with treatment notes as well as the Ebenezer Square functional assessment indicating that Plaintiff was able to manage his mental health symptoms. As correctly noted by the ALJ, Dr. Fabiano's opinion was also consistent with the opinion of State agency consultant Dr. Dipeolu who opined that Plaintiff was moderately limited in social functioning, but could "carry out simple tasks in a lower contact, lower stress environment." (Dkt. 6 at 97).[6]

Plaintiff next argues that the ALJ erred in weighing NP Roy's opinion as to his mental functioning. As an initial matter, the Court notes that, as a nurse practitioner, NP Roy's opinion is not entitled to any special weight. *See Genier v. Astrue*, 298 F. App'x 105, 108 (2d Cir. 2008) ("[N]urse practitioners . . . are defined as 'other sources' whose opinions may be considered with respect to the severity of the claimant's impairment and

---

from a treating physician, and so the ALJ did not rely on Dr. Fabiano's opinion to discount any such opinion. *Estrella* does not stand for the broad proposition that a consultative physician's opinion can never constitute substantial evidence in support of an ALJ's findings. To the contrary, "it is well-settled that a consulting psychiatric examiner's opinion may be given great weight and may constitute substantial evidence to support a decision." *Colbert v. Comm'r of Soc. Sec.*, 313 F. Supp. 3d 562, 577 (S.D.N.Y. 2018).

[6]    Plaintiff argues that Dr. Fabiano's opinion was "at odds with the longitudinal record" like in *Mikrazi v. Comm'r of Soc. Sec.*, No. 15-CV-698, 2016 WL 5110035, at *9 (W.D.N.Y. Sept. 21, 2016). In *Mikrazi*, the court found that the consultative examiner did not have "a complete understanding of the nature of [the] plaintiff's symptoms" because she reported the plaintiff had no panic attacks, but the record showed that the plaintiff "experienced panic attacks, some as recently as a month prior to her examination" by the consultative examiner. *Id.* at *9. Here, by contrast, Dr. Fabiano did not affirmatively conclude that Plaintiff never suffered from hallucinations, but rather noted there was no evidence of hallucinations "in the evaluation setting." (Dkt. 6 at 308).

ability to work, but need not be assigned controlling weight." (citation omitted)); *see also Taylor v. Colvin*, No. 3:14-CV-0928 (GTS), 2016 WL 1049000, at *5 (N.D.N.Y. Mar. 11, 2016) ("[A]n opinion from a nurse practitioner is not a medical opinion that is entitled to any particular weight under the regulations." (citations omitted)).

NP Roy completed a mental residual functional capacity questionnaire and opined that with regards to mental abilities and aptitudes needed to do unskilled work, Plaintiff's functioning was mostly "unlimited or very good" and "limited but satisfactory," with the exceptions that he was seriously limited in: sustaining an ordinary routine without special supervision; working in coordination with or proximity to others without being unduly distracted; completing a normal workday and workweek without interruptions from psychologically based symptoms; and performing at a consistent pace without an unreasonable number and length of rest period.  (Dkt. 6 at 592).  Significantly, NP Roy opined that Plaintiff had no limitations with respect to the mental abilities and aptitudes needed for semiskilled and skilled work (understanding, remembering, and carrying out detailed instructions, setting realistic goals or making plans independently of others, and dealing with the stress of semiskilled and skilled work).  (*Id.* at 593).  Moreover, NP Roy opined that Plaintiff had generally no limitations with respect to the mental abilities and aptitudes needed for particular types of jobs (interacting appropriately with the general public, maintaining socially appropriate behavior), with the exception that Plaintiff was "limited but satisfactory" in adhering to basic standards of neatness and cleanliness.  (*Id.*).

The ALJ assigned little weight to NP Roy's opinion, finding the opinion inconsistent with evidence that "suggest[ed] greater ability than [NP Roy] indicated."  (*Id.* at 30 ("[The

opinion] is inconsistent with [Plaintiff's] activity level, his ability to perform schoolwork,

his interaction at Ebenezer Square, his ability to shop and go online for six hours, etc.")).

To the extent that NP Roy's opinion conflicted with the evidence of record, which included

the Ebenezer Square functional assessment and the opinions of Dr. Fabiano and Dr.

Dipeolu, the ALJ was entitled to resolve the conflict.  *See Pullins v. Comm'r of Soc. Sec.*,

No. 1:18-cv-01303-DB, 2019 WL 6724586, at *5 (W.D.N.Y. Dec. 11, 2019) ("[I]t is the

role of the ALJ to resolve conflicts in the record." (citing *Veino v. Barnhart*, 312 F.3d 578,

588 (2d Cir. 2002))).  Moreover, contrary to Plaintiff's assertion that the ALJ improperly

considered his activities of daily living in assessing NP Roy's decision, it is well settled

that "[a]n ALJ has discretion to resolve conflicts in the record, including with reference to

a claimant's reported activities of daily living. . . ."  *Perozzi v. Berryhill*, 287 F. Supp. 3d

471, 492 (S.D.N.Y. 2018).[7]  The Court finds no error in the ALJ's assessment of NP Roy's

opinion.

Having concluded that Dr. Fabiano's opinion was not rendered stale, Plaintiff's

argument that the mental RFC finding was formulated without a medical opinion

---

[7]     The Court rejects Plaintiff's argument that the ALJ mischaracterized Plaintiff's
activities.  (Dkt. 11-1 at 21-22).  Plaintiff's ability to perform schoolwork was evidenced
by the completion of three college courses.  (Dkt. 6 at 58-60).  Moreover, although Plaintiff
testified that he had taken a leave of absence the semester of Fall 2016, Plaintiff did not
testify that his mental health symptoms necessitated the leave of absence.  (*See id.* at
60-61).  Plaintiff focuses on the mere fact that he lived at Ebenezer Square and received
some assistance with activities as evidence that he was disabled.  (*See* Dkt. 11-1 at 21-22;
Dkt. 17 at 5).  However, Plaintiff does not attempt to reconcile this position with the
Ebenezer Square functional assessment which indicated that Plaintiff could perform most
tasks independently, and some tasks with encouragement or assistance.  (Dkt. 6 at 503-06).
Significantly, the assessment did not assess Plaintiff as being unable to complete tasks
independently for any of the activities listed.  (*See id.*).

necessarily fails.  (*See* Dkt. 11-1 at 25).  The ALJ limited Plaintiff to occasional interaction with supervisors, co-workers, and the public (Dkt. 6 at 19) based on Dr. Fabiano's opinion that Plaintiff was moderately limited in relating adequately with others (*id.* at 309), which was also consistent with Plaintiff's testimony that he suffered from anxiety and panic attacks when he is around a lot of people (*id.* at 70).  The ALJ also limited Plaintiff to simple instructions and tasks and work in a low stress environment (*id.* at 19) accounting for Dr. Fabiano's opinion that Plaintiff was moderately limited in appropriately dealing with stress (*id.* at 309), which was consistent with Plaintiff's testimony that he had difficulty maintaining a schedule independently and worked with a case manager to avoid "overload[ing] [him]self with too much" (*id.* at 67-68).  The ALJ also limited Plaintiff to no supervisory duties, no strict production quotas, and minimal changes in work routine and processes (*id.* at 19) consistent with Plaintiff's testimony that he experienced panic attacks that made it "really hard [for him] to think . . . how to do things" (*id.* at 70).  As discussed above, the fact that the ALJ assessed greater limitations beyond those identified by Dr. Fabiano is not grounds for remand.  *See Baker*, 2018 WL 1173782, at *4.

The Court is also not persuaded by Plaintiff's argument that the ALJ failed to "properly account for Plaintiff's well-supported functional limitations" in assessing his mental RFC.  (Dkt. 11-1 at 32-33).  Plaintiff argues in particular that the RFC improperly assessed Plaintiff as capable of occasional interaction with supervisors, co-workers and the public due to Plaintiff's "significant and encompassing" anxiety and depression.  (*Id.* at 32).  However, NP Roy found that Plaintiff was: "unlimited or very good" in interacting appropriately with the general public and maintaining socially appropriate behavior; and

"limited but satisfactory" in accepting instructions and responding appropriately to criticism from supervisors and getting along with co-workers without unduly distracting them or exhibiting behavioral extremes (Dkt. 6 at 592), consistent with the Ebenezer Square functional assessment which indicated that Plaintiff independently maintained contact with family and his social network and treated peers and staff with respect (*id.* at 506) and Dr. Fabiano's opinion that Plaintiff was moderately limited in his ability to relate adequately with others (*id.* at 309). Accordingly, Plaintiff's argument that there was "*nothing* in the medical record which supports Plaintiff being able to perform interaction with others for 1/3rd of the workday" (Dkt. 11-1 at 33) is plainly without merit.

Further, contrary to Plaintiff's characterization of the VE's testimony (*id.* at 33), the VE did not testify that someone who needed reminders would be unemployable. Instead, the VE confirmed that a claimant who required special supervision because he had difficulty sustaining ordinary task behavior would be unemployable. Significantly, neither Dr. Fabiano nor Dr. Dipeolu assessed Plaintiff as being unable to sustain ordinary task behavior (*see* Dkt. 6 at 97, 309), nor did the evidence of record indicate that Plaintiff had such a limitation. Further, as discussed above, the Ebenezer Square functional assessment indicated that Plaintiff was able to complete most tasks independently. (*See* Dkt. 6 at 503-06). As such, Plaintiff's argument that the fact that he lived at Ebenezer Square and received reminders for certain tasks is evidence that he was unable to complete any work related functions is without support in the record.

Plaintiff also argues that it was error for the ALJ to not assess limitations accounting for Plaintiff's severe impairments of depression, anxiety, and PTSD. This argument is

unsupported by the record.  The ALJ assessed a detailed mental RFC finding accounting

for the Plaintiff's mental impairments and related mental health symptoms:

> [Plaintiff] can understand, remember and carry out simple instructions and
> tasks.  He is able to work in a low stress work environment reflected by
> simple work, no supervisory duties, no independent decision-making
> required, no strict production quotas, and minimal changes in work routine
> and processes.  [Plaintiff] cannot travel to unfamiliar places.  He can have
> occasional interaction with supervisors, co-workers and the public.

(Dkt. 6 at 19).  To the extent that Plaintiff argues that the impairments resulted in more

severe limitations, it is ultimately Plaintiff's burden to prove a more restrictive RFC than

the RFC assessed by the ALJ.  *See Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018).

The ALJ reasonably concluded that Plaintiff failed to meet his burden in this case.  In

formulating the RFC assessment, the ALJ considered the objective medical evidence,

Plaintiff's treatment history, allegations, and the opinions of physicians.  As such, the RFC

assessment in this case is consistent with the record and is supported by substantial

evidence.  Accordingly, neither reversal nor remand is warranted.

## C.     <u>Step Three Analysis</u>

Finally, the Court considers Plaintiff's argument that the ALJ erred by failing to

properly evaluate Listings 12.04, 12.06, and 12.15 in his Step Three analysis.  (Dkt. 11-1

at 26-27).  "Plaintiff has the burden of proof at step three to show that [his] impairments

meet or medically equal a Listing."  *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 272

(N.D.N.Y. 2009).  "To match an impairment in the Listings, the claimant's impairment

must meet all of the specified medical criteria of a listing."  *Loescher v. Berryhill*, No. 16-

CV-300-FPG, 2017 WL 1433338, at *3 (W.D.N.Y. Apr. 24, 2017) (internal quotation

marks and citation omitted).  "If a claimant's impairment manifests only some of those

criteria, no matter how severely, such impairment does not qualify." *Rockwood*, 614 F. Supp. 2d at 272 (internal quotations and citations omitted).

An ALJ is required to provide an explanation "as to why the claimant failed to meet or equal the Listings, '[w]here the claimant's symptoms as described by the medical evidence appear to match those described in the Listings.'" *Rockwood*, 614 F. Supp. 2d at 273 (quoting *Kulesza v. Barnhart*, 232 F. Supp. 2d 44, 52 (W.D.N.Y. 2002)) (alteration in original). "[I]t is the ALJ's responsibility . . . to build an accurate and logical bridge from the evidence to [his or her] conclusion to enable a meaningful review," and "[t]he Court cannot . . . conduct a review that is both limited and meaningful if the ALJ does not state with sufficient clarity the legal rules being applied and the weight accorded the evidence considered." *Loescher*, 2017 WL 1433338, at *3 (internal quotation marks and citations omitted) (second alteration in original). However, "[a]n ALJ's unexplained conclusion [at step three] of the analysis may be upheld where other portions of the decision and other 'clearly credible evidence' demonstrate that the conclusion is supported by substantial evidence." *Ryan v. Astrue*, 5 F. Supp. 3d 493, 507 (S.D.N.Y. 2014) (citation omitted).

To satisfy the requirements of Listings 12.04, 12.06, or 12.15, Plaintiff must meet the criteria of paragraph (A) and either paragraph (B) or (C) of those Listings. Paragraphs (B) and (C), under Listings 12.04, 12.06, and 12.15, are identical. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.04, 12.06, and 12.15. To satisfy the paragraph (B) criteria, a plaintiff must "show extreme limitation of one, or marked limitation of two, of the following areas of mental functioning: 1. Understand, remember or apply information; 2. Interact with others; 3. Concentrate, persist, or maintain pace; 4. Adapt or manage oneself."

*Jeffrey W. v. Berryhill*, No. 1:18-CV-0115 (LEK), 2019 WL 2210593, at \*7 (N.D.N.Y. May 22, 2019) (quotation omitted).  A limitation is "marked" if it "interferes seriously with a claimant's ability to function independently, appropriately, effectively, and on a sustained basis." *Id.* (quotation and alteration omitted).

To satisfy the paragraph (C) criteria, a plaintiff must show "(1) medical documentation of the disorder for a period of at least two years and (2) evidence of both (a) medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of the mental disorder," as well as (b) "marginal adjustment, that is, the claimant has minimal capacity to adapt to changes in his environment or to demands that are not already part of his daily life." *Id.* (quotation and alterations omitted).  Plaintiff contends that the ALJ failed to properly evaluate both paragraph (B) and (C) in assessing Plaintiff's mental health impairments.  (Dkt. 11-1 at 27).  The Court disagrees.

In deciding Plaintiff's claim, the ALJ provided a robust discussion of the paragraph (B) criteria, and ultimately concluded that Plaintiff was moderately limited in: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself.  (Dkt. 6 at 18).  Plaintiff has raised a number of objections to the ALJ's assessment of the paragraph (B) criteria, all of which are essentially disagreements over the ALJ's view of the medical evidence of record.  (*See* Dkt. 11-1 at 28-30).  Plaintiff attempts to avoid this characterization by arguing that the ALJ "selectively cited evidence and avoided giving an accurate representation of Plaintiff." (*Id.* at 30).  In particular, Plaintiff argues that it was

"insulting" for the ALJ to hold Plaintiff's "three-credit introductory class against him" and that it was "equally irresponsible" for the ALJ to cite the fact that Plaintiff independently grocery shopped and lived on his own without noting that Plaintiff completed such activities "with the help of assisted living, one of the most supportive structures you can be in." (*Id.*).   Contrary to Plaintiff's assertions, the ALJ considered this evidence as well as the Ebenezer Square functional assessment and the opinions of Dr. Fabiano and Dr. Dipeolu in finding that Plaintiff was only moderately limited in the four mental functioning domains of the paragraph (B) criteria.   Accordingly, Plaintiff has not demonstrated reversible error in the ALJ's assessment of the paragraph (B) criteria.

Plaintiff next argues that the ALJ's failure to provide an explanation as to why Plaintiff did not meet the paragraph (c) criteria was error requiring remand.   Again, the Court disagrees.   While the ALJ did not set forth a detailed explanation regarding the paragraph (c) criteria, the basis for the ALJ's determination is easily discernible from the record.   In particular, the Court notes that the Commissioner's regulations provide that marginal adjustment is demonstrated where there is evidence that changes or increased demands have led to exacerbation of symptoms and signs, and to deterioration in functioning.   20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(G)(2)(c).   Examples of such deterioration include the inability to function outside of your home or a more restrictive setting, without substantial psychosocial support; the necessity for a significant change in medication or other treatment; and episodes of deterioration that require hospitalization. *Id.*

Here, the ALJ found that Plaintiff successfully completed three college courses, was able to shop and go online for six hours a day, and functioned mostly independently at Ebenezer Square.  (Dkt. 6 at 30, 78).  The record also indicated that Plaintiff was able to complete his schoolwork and maintain a 93% average, despite missing several classes (*id.* at 29, 466), and that Plaintiff had expressed an interest in pursuing a major in electrical engineering after completing a major in computer networking (*see id.* at 570).  The ALJ also found that Plaintiff traveled independently by bus, participated in Tae Kwon Do three times a week, and visited the library and the Wellness Center twice a week.  (*Id.* at 29).  Further, mental status examinations indicated that Plaintiff was observed to have future and goal directed, logical thought processes.  (*Id.* at 419, 426, 440, 450, 562, 569, 570, 642).  Based on the ALJ's findings and the evidence of record, no reasonable fact finder could have found that Plaintiff had the marginal adjustment necessary to satisfy the paragraph (C) criteria.  *See Jeffrey W.*, 2019 WL 2210593, at *8 (finding plaintiff did not demonstrate "marginal adjustment" under paragraph (C) criteria where plaintiff's daily activities included managing money, playing poker, using his computer, driving a car, shopping, cooking, fishing, walking the dogs, cleaning his clothes, and vacuuming, and medical evidence indicated plaintiff's good concentration, intact memory, normal thought content, and goal oriented thought processes).[8]  Plaintiff has not demonstrated a step three error that would warrant remand.

---

[8]     Plaintiff argues that this Court's decision in *Jablonski v. Comm'r of Soc. Sec.*, No. 1:18-CV-00597 EAW, 2019 WL 4439453, at *4 (W.D.N.Y. Sept. 13, 2019) always requires remand where the ALJ fails to provide a more fulsome discussion as to why a plaintiff's symptoms do not meet the paragraph (C) criteria.  The Court disagrees.  In this

## CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 16) is granted, and Plaintiff's motion for judgment on the pleadings (Dkt. 11) is denied.  The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated:      August 27, 2020
            Rochester, New York

---

case, the medical evidence of record indicated that Plaintiff plainly did not meet the paragraph (C) criteria.  As such, remand on this basis would be inappropriate.